Good morning, your honors, and may it please the court, Randy L for the Plaintiff Appellant, A1 Electrician this morning, and with me today are James Hultberg and Justin McAdam. Chief Judge, I'll take your advice and watch the clock, and I'll save four or five minutes for rebuttal today. The first issue we'd like to address this morning is the as-applied and facial overbreath of Hawaii law triggering political committee-like burdens for A1. There are multiple crucial questions here, and I'd like to first suggest some issues that are not crucial questions here. One issue that is not a crucial question is the level of scrutiny that applies, and the reason that's not crucial is that we get to the same result either way. Another issue that is not crucial is what – You're obviously happy it was strict scrutiny, right? Oh, yes, we are. Yes, we are, because – It's not wholly irrelevant. Pardon? It's not wholly irrelevant. It's not wholly irrelevant, but we submit that the result is the same either way because the tailoring analysis should be the same either way, regardless of whether we're strict or under strict scrutiny or whether we're under exacting scrutiny. Another issue that is not crucial, we submit, is whether we address the non-candidate committee definition or whether we address the – or whether the court converts the challenge to the non-candidate committee definition into a challenge to the non-candidate committee burdens themselves, as this court did in Human Life of Washington. And, again, the reason is the same. It doesn't affect the result. We get to the same place either way. We submit that the plaintiff prevails even under Human Life of Washington, and it is no secret to this court that we are not the biggest fans of Human Life of Washington, but we prevail even under Human Life of Washington for multiple reasons. Number one, Hawaii non-candidate committee burdens are greater than the burdens that were at issue in Human Life of Washington. So Human Life of Washington does not preclude the conclusion under Citizens United that the burdens that Hawaii triggers for non-candidate committees are onerous. What are the differences between Hawaii law and Human Life of Washington law? Well, Hawaii law requires record-keeping, as we note on page 61 of our opening brief. As we note on the same page of our opening brief, there are also reporting requirements in every single reporting period. That was not the case in Human Life of Washington. In addition, under Hawaii law, there are limits and source bans on contributions received. That was not – that was also not the case in Human Life of Washington. Number two, unlike the Human Life of Washington plaintiff, political advocacy under Human Life of Washington, page 1011 of volume 624 of the Federal Fed Third, political advocacy is not a priority for A1. A1 only incidentally engages in political advocacy. Well, I mean, you can say that, but obviously the Hawaii legislature has made a different judgment, and they think if you spend more than $1,000 on political advocacy, it's not merely incidental. And that is – you're correct, Your Honor. That is the Hawaii legislature's judgment. Our question here is a separate question. Is that legislative judgment constitutional? And we have plenty of cases that say when you get down to that level of the analysis, just figuring out should it be $1,000, should it be $2,000, should it be $5,000, we're not here to second-guess. We're not here to micromanage that dollar cutoff that a state legislature imposes. Well, two points to that. We are not challenging the disclosure threshold. That's not what's at issue here. What's at issue here is the non-candidate committee definition. And my position is that $1,000, I guess, shouldn't put you in the – that if you spend more than that, you should still be deemed to only incidentally engage in political advocacy. And I'm just saying that's not the judgment that is before us that the legislature has made. And what – I mean, maybe you can point me to case law that says we get to step in and say, well, no, $1,000 is too low, it should be $2,000, it should be $5,000. Well, the priority incidentally test, as Your Honor is aware, is wholly a creation of human life of Washington. And there is no additional Ninth Circuit case law on priority incidentally. And priority incidentally doesn't come up in any other circuits. So this is case number two. So what is – let's assume human life, we believe it's within the realm of human life. You're suggesting we should then change the law or wait for the Supreme Court to tell us we're wrong? What are you suggesting? We're suggesting that under human life of Washington, that our political advocacy is not a priority. It's not a priority for A1. And instead it's only an incidental. Is it priority or primary? Priority and primary are two separate issues. We submit under our second point that political advocacy is not a priority for A1, and instead A1 engages only incidentally in political advocacy, even if A1 prevails on its contribution ban claim and therefore is able to make the contributions it seeks to make. But especially, especially if A1 does not, does not prevail on its contribution ban claim and therefore is able to engage only in its independent spending for political speech, and its only independent spending for political speech is the three newspaper ads that A1 ran in 2010 and ran again in 2012. No circuit we submit has allowed state governments to make an organization be a political committee or a political committee-like organization based on so little speech. Well, but that's what I'm saying. To me it just comes down to you're not happy with the cutoff that the Hawaii legislature has imposed. You think it should be higher. Maybe you're right. I mean, I agree. A thousand dollars doesn't seem like very much. But I'm just, the case law I'm familiar with says we don't get, when we get down to that point of just deciding is this too little, should it be a little bit higher, we owe a lot of deference to the state legislature's judgment. Citizens United's page 911 speaks to deference and speaks about deference to the legislature. And in the very next sentence, or in the rest of the clause of that sentence, talks about the importance of the law being constitutional in the first place. So a court does not defer to a legislature when the law is unconstitutional in the first place, and then that is the ultimate question. Now, to address Your Honor's question about primary, that's a separate issue. And in the alternative to the priority incidentally test, we submit this court can consider the issue that it did not need to consider in Human Life of Washington, and that is the constitutional necessity of the word primary in a political committee definition. That issue did not need to come before the court in Human Life of Washington, as Your Honors know, because the word primary is in the Human Life of Washington statute. So the court did not need to consider whether it needed to be there. We submit that it does need to be there, and that issue does come before us here, because the word primary is not in Hawaii's non-candidate committee definition. I mean, I think I have a different reading of Human Life than you do, but maybe you can point me to the language I should be looking at. I read Human Life as already having resolved this issue by saying primary is not the constitutional floor, I guess is the right word, that as long as you're above the merely incidental level, the disclosure requirements can be imposed constitutionally. We would suggest that's not correct, Your Honor, because the word primary is not in the law that the Human Life of Washington court considered. They do say we do not hold that the word primary or its equivalent is constitutionally necessary. Right, right. They did not reach that issue. The Human Life of Washington court did not need to reach that issue because that word was already in the law. It saved that question for another day. And when the court in Human Life of Washington said we do not hold that that's necessary, they were not holding that it is not necessary. They were just saying we do not hold this and we're not reaching that particular issue. So we'll have to talk to them and find out what they have in mind. We submit that the word primary is necessary because the Supreme Court's decisions in Buckley and MCFL, Massachusetts Citizens for Life, at least contemplate that organizations be political committees when V or A, and we think V is better than A, but we win either way, we suggest, primary purpose of an organization is the nomination or election of a candidate. That's the first issue we'd like to address this morning. The second issue we would like to address this morning, and I'll speak briefly to that and then yield the floor to the Attorney General's office, is the contribution ban. And there our point is fairly simple. When A1 does not contribute to candidates who do not oversee the contracts that A1 receives, and when A1 does not contribute to candidates who decide whether A1 receives contributions, when you say oversee, what does that mean? Supervise. Well, let's just take this as an example. You know, we're a federal agency. We're a court, but also a federal agency, and we spend money. We have contracts. We contract with GSA and so on. And there's a whole host of people in Washington that we have to deal with. There are appropriations committees. There are committees in Congress that oversee the GSA. There's GSA itself. There's a whole host of organizations who have say, one way or the other, as to how we spend our money and have oversight and ask various questions. Sometimes they send us letters. It's very hard to say that we're supervised by anybody, except perhaps the Administrative Office of the U.S. Courts, or I guess we're supervised by the Supreme Court substantively. But there are quite a few people that have a say in various aspects of our existence. How do you cabin those things? Who would you say? And we're not unique. This is true of EPA or any other agency here. How would you define who is supervising? I think you'd probably have to look at the duties that the legislature has in looking to the contracts. Let's say, you know, this is a public contract. And the legislature appropriates funds. Agencies, I assume state agencies or federal agencies, they can't spend money that isn't appropriated by the legislature. This is how it works, right? So wouldn't everybody in the legislature be automatically covered because they all have to vote on appropriations, just for starters? Well, no, because appropriating money for the contract is not the same as deciding who gets the contract and is not the same as overseeing the contract. That is highly short-sighted and not really realistic, because they may not be able to tell us, I say us, I don't mean the court particularly, but let's say an agency is out there and has a contract for certain services, and it may be that people in Congress can't tell us who to do it. But, boy, if they're unhappy with what the agency does, you'll hear about it. The next time you've got appropriations, they'll say, you know, we want to see how you spent your money last time. Or next time they have oversight hearings. Or the next time you have somebody that needs to be confirmed as an agency head. It's all tied together. I mean, I have to assume that state legislatures work very much like the federal legislature. So I don't see how you can sort of cut out people who ultimately have oversight over the agency, how you can say, oh, no, they're not involved. Particularly in light of what's going on in Washington now, there are all sorts of players who aren't on appropriations committees in Washington, in any event, who are exercising influence as a minority against the major wishes of maybe the senior members of the caucus. They can certainly make their authority known negatively, if nothing else. So why wouldn't the Hawaii legislature make a rational judgment that that's why these contributions, it doesn't prevent the owner of A-1 from making contributions. It's just A-1. Isn't that correct? Okay. Let me answer that briefly and save the remaining minute. Your Honor said rational judgment. I understand. The level of scrutiny here doesn't ask about a rational judgment. And Your Honor also used the word influence. We know under Citizens United, pages 908 to 910, that influence is not corruption. And with that, if I may, I'll yield the floor. Save the remaining minute. Thank you. Good morning, Your Honors. May it please the Court. Deirdre Marie Iha for the chair and members of the Hawaii Campaign Spending Commission. Since we're speaking about it, do you mind addressing the last argument first? It would help me because of the contribution limit first. Oh, absolutely, Your Honor. With me is Robyn Chun. With me is Robyn Chun. I didn't want to ignore my colleague, but I'm certainly happy to discuss the government contract. Yeah, I wasn't sure which way you were planning to go, but since we're sort of speaking about it. Absolutely, Your Honor. The government contractor's ban, just as a point of clarification, that is the only, only contribution limit or ban that is challenged in this appeal. Any indication to the contrary is incorrect. So when Mr. Elf talks about a contribution ban or source limit, that is the only claim he can be referring to before this Court. Your Honor's questions are completely correct. The Hawaii State Legislature decides for itself how to exercise its authority over appropriations, over the power of the purse for all of state government. They exercise that authority in numerous ways. Let me ask you, I think I saw you nodding, so I gather you agree with the purpose of my question. The contribution ban also applies to subdivisions, right? Maybe I'm misunderstanding. Is it just state government? I thought it applied to city governments as well. Oh, no, it does apply to city governments as well, but it depends on the legislative appropriation is how it gets triggered. So if the source of the money is appropriated by the legislative body, for the city and county of Honolulu, that would be the city council, and for all of state agencies, that is the state legislature. I see. So if you are a contractor for Honolulu, just on the same, that would not prevent you from contributing to the state legislature? Oh, I see, Your Honor. That, rather than guessing, I would rather check the provision. I thought it did, but it's a complicated law, and maybe I'm misunderstanding it. Your Honor, as I read it, once you are a government contractor with any of the potential state or county-level government agencies, you are banned from making contributions to any candidate. So that means that you would be – And if I – just because time is short – in California, which I know I'm most familiar with, and I must admit I'm not terribly familiar with state government as such, but my understanding is we have different kinds of cities and counties, and they have different levels of relationship with the state legislature. But we certainly have some cities, and this may be true in Hawaii as well, where the city does not get any money from the state and is wholly independent. I think that there are cities like that. Well, I'm assuming that there are, Your Honor. In fact, Hawaii's history, we actually have quite a bit more centralization at the state level than is common among other states maybe of similar size. Let me just focus in. If there is a city that doesn't get its money from the state, in what sense would the state legislature be supervising its expenditure of money? I mean, it's an independent entity. I see, Your Honor. I'm not aware of any county in Hawaii that does not receive money from the state, just because we know about the way the appropriations are handled and the counties who receive significant funds from the state for various purposes. That argument has not been raised by my opponent. In terms of the way that the argument is actually presented before you, it concerns only candidates for the state legislature. That is the only candidates that they have identified that they want to contribute to, and that is their entire argument is that the legislature's supervisory authority over the expenditure of public funds is not closely connected enough to demonstrate corruption. We believe that we have proven that to be false, both as a matter of logic, as a matter of law, and a matter of facts. We have all three. And they've just raised an as-applied challenge to the contribution? Correct. Yes, it is an as-applied challenge only, Your Honor. Also important to remember is that there are other portions of 11355, the government contractor span. The only portion that has been challenged in this case is as it applies to contributions to candidates. None of the other provisions are at issue. Let me ask you another question, if I may. Yeah. And this is sort of a tailoring question. Here's what it looks like to me. You're not a contributor to a contract. You don't have a contract with a state. You then make a bunch of contributions, get in good with them. You get a contract. Then you stop making contributions until the contract runs out. Right. And then you can go out, make more contributions, get another sweet, hard deal on a contract. Why isn't this backwards? Why isn't the way the law is drafted entirely sort of irrational? And I realize rationality is not our standard, but it has to at least be rational. Right. It seems to me the people who don't need it, who already have the government ledges, don't get to make. Right, Your Honor. Whereas the people who don't have the government ledges then get to pay their way to. I think some of this can be answered by the size of the market, Your Honor. Hawaii is a very small state. The people who do government contracts typically do them in succession, and they sort of never have a period in which they are not a contractor. So covering for the period of the contract is a defined period that's a lot easier to determine than a prospective contractor. That might be how prospective are they? I mean, they submitted a bid or they're thinking about it. I mean, it's easier to define, to draw the line. Also relevant on this point, Your Honor, is that. So what is the triggering event for the prohibition? Is it submitting a bid? Is it actually getting an award? What is the triggering event? It's the length of the contract itself, Your Honor. So you could be bidding on a contract and making contributions galore. Yes, Your Honor, which actually makes the statute more narrow than the statute upheld in Garfield by the Second Circuit. Perhaps less effective. Perhaps, but it is. Perhaps less rational. Like I said, Your Honor, you know, Hawaii is a small state. Honolulu is a small town. You've got the same people doing the same contracts over and over again. You know what? Washington, D.C. is a small town. I think they have different sort of problems, Your Honor. Your Honor, exactly on this point, the Second Circuit in Ognebenni said, quoting the Buckley case, a statute is not invalid under the Constitution because it might have gone farther than it did. So just because an under-inclusiveness argument, the Second Circuit rejected that as to the New York City contractor's provision. Do you think Buckley is on the chopping block? For this case, no. No, I'm just saying Buckley is. Oh, you mean for McCutcheon, Your Honor? Are you asking about McCutcheon? I'm just asking. I have no idea. You're asking the wrong people. Yeah, I know. The point is, do you think we ought to hold for McCutcheon? I don't believe so, Your Honor. I am aware of only one case in this circuit that has been held because of McCutcheon, which is there, the Montana case. And that case raises an aggregate contribution limit, which is the issue raised in McCutcheon. So I think we should not. What if the Supreme Court changes the standard for evaluating contributions? Well, I guess it would depend very much whether this Court had decided the case already. If the case is still sitting, then obviously we would ask for leave to submit supplemental briefing. But Agostini from the U.S. Supreme Court tells the courts that we're not to anticipate the Supreme Court changing any of its own precedent. We let them do that. Our opponents have not asked for a stay, Your Honor, and we are not asking for it. I don't think any of us ask you should we anticipate that and change the standard. I think the questions are, is it wise for us, instead of writing an opinion based on shifting sands, to just hold the case, see what the Supreme Court says, McCutcheon, and then apply, if there's a new standard, apply that standard? You could reach that conclusion, Your Honor. I'm the appellee, so as of right now, my statutes are upheld, so I don't think that would operate. In the state of Hawaii's detriment, there is one pragmatic concern that always faces us. It's a little like the prosecution when the defendant is in jail. Maybe not quite like that, since I really don't want to put Randy in jail. I said like, like. Okay, right. I think, Your Honor, you could conclude that. However, I do believe that in the wake of Citizens United, I think any time there's ever a campaign finance case at the Supreme Court, everyone is going to throw up their hands. I don't think that's warranted. I think we should rule on the laws that exist today. So our position is we're not seeking a stay. We would understand if you did, but we are not seeking it. If I could turn to the non-candidate committee contribution definition, please. Okay, Your Honor, the non-candidate committee definition is very similar to the provision upheld in Human Life. Your Honor's questions, the correct holding of Human Life of Washington is that a political committee registration requirements must avoid, quote, sweeping into its purview groups that only incidentally engage in political advocacy. That's at page 1011. That's the language I was thinking of. But, you know, I just looked at it again, and I see the other side's argument. I'm not sure we can categorize that as a holding. How could that be the holding given what the language we were dealing with in Human Life? Well, some of it is what was in front of them. Actually, the statute didn't say primary, if you recall from looking at the case. It's actually a judicial interpretation that was added by the Washington Supreme Court. We would submit that the most natural and straightforward application of Human Life is that there are multiple ways by which the state may satisfy the exacting scrutiny test. It's the nature of having independent state governments that the state itself gets to decide how to do that. So they're saying priority versus incidental. Your Honor, in 2010, A1 Electricity spent more than $65,000 on contributions, donations to parties, political organizations, and its own ads. That is not defined as incidental in English. That's not incidental. So I don't think that even under their theory that it raises a priority incidental test. It depends a lot on how big a company they are. I mean, there are certain companies out there for whom $65,000 isn't even a chump change. Your Honor, Human Life of Washington rejected that contention because the court acknowledged that you could spend a whole lot of money but be from a very big company, and that shouldn't be the determining factor. You could spend many millions of dollars, but if you were Microsoft, you might not notice versus another organization could spend millions, and that it would just be an invitation for circumvention that groups could just. Well, okay, but the threshold is so low here. We know from this case that, what, just to run a little rinky-dink newspaper ad takes you above it, right? So I guess I am troubled, though, by the notion that if I just want to speak about, you know, an upcoming election just as a regular or, you know, not as a private citizen, but just as any kind of an organization, I want to run one ad, I have to comply with this whole range of disclosure and reporting requirements? Your Honor, the disclosure requirements are not as courteous as Mr. Ulf seems to indicate. Everything is done digitally. The form is like a page, and the standard from Buckley, which has been applied by this Court multiple times, is wholly without rationality to determine the disclosure threshold. So 11-321-G has the $1,000 threshold, and applied by this Court in family pact. But there must be some point at which the amount gets low enough where we say it's not rational, right? Well, I'm not saying that $1,000 is there or courteous, but, you know, if it's $50 or $25 or $10. Well, I think at some point we'd have to say, you know, this is nonsense. The Ninth Circuit's cases, I think, already answered this, Your Honor. There is the Canyon. $2 question? The $3 question. No. I think we picked a higher number than that. The case in Canyon Ferry, that's incidental. Canyon Ferry was like a couple of pages of copies on a copier, and this pastor spoke for two minutes. That is how this Court has defined incidental. There is also – give me a moment. I'm looking. I know there's a recent one that had a $25 threshold that was upheld. I'm trying to recall which one it is. I apologize. I think it might have been – yes. Family pact v. McKenna, Your Honor. Disclosure rule with a very low threshold of $25 upheld. That's very recent from this Court. So I think that – A business or an enterprise that does other things, and this is just incidental? Family pact doesn't sound to me like – I don't think that's the name of a business, Your Honor. I'm afraid I don't know the situation of the plaintiff in that case. I don't think that that makes a difference. I don't understand where entities that are in the business of running campaigns or continuing campaigns. It's quite the same organization. We, you know, church or, you know, whatever, and all of a sudden there's an issue out there in which our membership has a interest. Yes. Let's say there's a ballot initiative about assisted suicide, and, you know, this organization feels scorned. You know, normally it doesn't get involved in campaigns. This is something that we need to get involved in. That's a repackaging of the major purpose test, which is rejected by Human Life of Washington. And so this court has already rejected the contention that the organization's sole or major purpose that needs to be the purpose of political advocacy. So no matter how you slice it or how you explain that concept, this court has already concluded that an organization can have multiple purposes. We know organizations do have multiple purposes, and we submit that the logic of Human Life of Washington supports the non-candidate committee definition in exactly the same way that the district court upheld it. Before you run out of time, can I just hear your response to the argument that, with respect to their vagueness challenge to the expenditure definition, it seems like you concede that there needs to be a limited construction imposed, right? We don't consider it a concession, Your Honor. We actually think that that is the stated legislative intent from the 1979 enactment. I don't see how you get there, because the legislature did use express advocacy in other places, and it clearly had something else in mind when it defined expenditure. I'm sorry, Your Honor. The application of the narrowing gloss is to the phrase for the purpose of influencing in the non-candidate committee and expenditure definition. You want to have that narrowed so that it basically lines up with the express advocacy, right? And its functional equivalence, yes. And the legislature used that exact concept elsewhere, indicating that it had a broader notion in mind when it selected the influence. No, that wouldn't follow the legislative history. The language that goes to the purpose of influencing is the older language. The language that mirrors Wisconsin right to life's formulation of the functional equivalence of express advocacy is from the newer provisions. So I don't think you can read the legislature's intent in 2005 to retroactively change the intent that it was in the 1970s. Our legislature deliberately chose. We do not have to guess. They knew about the Buckley narrowing gloss. They wanted it there. That's why it's in the legislative history from the 1979 enactment. We have requested that the court apply the narrowing gloss under Huffman Estates. The federal court is obliged to consider the request of the enforcement agency. I see my time is up. Thank you very much, Your Honors. Thank you. You have minutes for rebuttal. I'm sorry, I didn't hear you. Minutes for rebuttal. Yes. Just a few points, Your Honor. Family PAC is a different kind of case. Family PAC is about an organization that is a political committee and does not object to being a political committee. It has the major purpose of nominating or electing candidates, or it passes the priority incidentally test. A1 is a different kind of organization. It objects to being a political committee. That's an entirely different analysis. The wholly without rationality standard is the standard under Kanyon-Terry for a challenge to a disclosure threshold. We don't challenge a disclosure threshold. That's not what is issued here. Number three, Citizens United says under Citizens United, pages 897 to 898, Hawaii's non-candidate committee burdens are onerous. There isn't any debate about what Citizens United says there. And the last point is the contributions that Mrs. Eham mentioned are pre-Human Life of Washington contributions. After Human Life of Washington, A1 changed the way it would make contributions because Human Life of Washington, in the district court's words, moved the ball. And we responded accordingly. And we thank the Court for its consideration. Do you think we ought to hold the case? The Supreme Court has decided no. Your Honor, in the ordinary course of things, a decision from the Ninth Circuit would come about a year after the panel hearing. In the ordinary course of things, the Supreme Court would issue its decision in the McCutcheon case, which was heard yesterday, by the end of June, probably before that. So in the ordinary course of things, I think McCutcheon will be out and decided before this Court decides this case. And we can ---- Sounds like a challenge to me. You're talking to a chief judge who has a six-month list, bad judge list. So if we don't get them out within six months, you know who gets that beat up on us. So I don't know where the ordinary course comes from. Look, just as I'm grateful that Mrs. E. has not going to put me in jail today, I'm not going to get into that one either. Just avoiding predictions about who's going to draft opinions faster, I'm asking you a question. Do you think we ought to sit down to draft an opinion in this case? Or should we put the case on hold and wait and see what the Supreme Court says? I mean, it's a simple question. I don't know why we should put the case on hold. I don't see anything about the McCutcheon case that suggests on its face that it's going to change the game on the contribution band. At the same time, as Your Honor knows from Your Honor's own experience, which far exceeds mine, you never know what the Supreme Court's going to do until it does it. And there is no better example of that in campaign finance law than Citizens United, which was an enormous surprise to our office. And we represented Citizens United in the lower court and at the first stages of the Supreme Court, and it did not come out the way we thought it would. So I think I'll stand by my first suggestion, notwithstanding the six-month rule. Yes, and let me point out for the record, let me point out for the record, I'm looking at family PAC, which happens to be a favorite opinion of mine, was argued and submitted November 16th, 2011, and we filed it on December 29th, 2011. Thank you. The record is duly noted, Judge Fisher. Yes, it is public. And we're glad. My only suggestion is we know this court has a very busy docket. We know that in the ordinary course of things, it takes about a year for a decision to come out. In that sense, asking whether we should hold this case for McCutcheon may be a solution in search of a problem, because McCutcheon may well be out before this case is decided anyway, and then it can be addressed in supplemental authority notice. Or, as Mr. Zia pointed out, if it's that complicated and we need additional briefing, we can put our heads together and make a suggestion. Okay. Thank you. We thank the court for its consideration.
judges: Kozinski, Fisher, Watford